UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY C. MOY, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELTMAN, ELTMAN & COOPER, P.C.<br><br>Defendant. | Hon. Marilyn D. Go, U.S.M.J.<br><br>Civil Action No. 1:12-CV-02382-KAM-MDG |

## MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiff, Jeffrey C. Moy ("Moy") submits this memorandum in support of the parties' joint motion requesting an Order that the Court (1) certify the proposed class for settlement purposes; (2) preliminarily approve the Proposed Settlement Agreement ("Settlement Agreement") (3) direct notice to those eligible to join the Settlement Class; and (4) set dates for opt-ins, objections, and a Fairness Hearing under the Federal Rule of Civil Procedure 23(c)(2)for the Court's final approval.

The parties have consented to referral to the Hon. Marilyn D. Go for "all proceedings relating to the joint motion for class settlement approval, including the entry of a final order" (ECF Doc. 24, So Ordered 5/2/13).

### I. NATURE OF THE CASE

#### A. THE FACTS UNDERLYING THE ACTION

This case concerns Plaintiff Moy's allegations that the Defendant, the law firm of Eltman, Eltman & Cooper, P.C ("EE&C") violated the Fair Debt Collection Practices Act (FDCPA) by sending false and deceptive collection letters to consumers in seeking to collect a

1

debt for its client Erin Capital Management , LLC ("Erin"). The collection letters contained the statement that "Currently, no attorney has personally reviewed the particular circumstances of your account, and this letter should not be taken as a representation of any such review nor as a threat of legal action."

Plaintiff Moy alleges that these statements are false and deceptive in that at the time such a letter was sent to him, EE&C had previously commenced a court action and obtained a default judgment against him regarding that same Erin account. <u>Amended Complaint</u> at Para. 23-25. The Complaint further alleges that the letter was a boilerplate communication, the form of which was prepared and approved by EE&C for use in cases in which EE&C had already represented Erin in obtaining a default judgment against the consumer. <u>Id.</u> at Para. 32

Plaintiff brought the action as a class action on behalf of himself and similarly situated individuals. Plaintiff seeks to represent himself and all members of the following Settlement Class:

> *[A]ll those individuals who opt-in timely, who meet the following definition:*
>
> *All persons to whom EEC, on or after May 15, 2011, sent a letter that was not returned as undeliverable to an address within Kings County regarding an Erin Capital Management LLC account that contained a statement materially identical or substantially similar to the August 18 Letter sent to the Plaintiff, which stated in relevant part: "Currently, no attorney has personally reviewed the particular circumstances of your account, and this letter should not be taken as a representation of any such review nor as a threat of legal action" when the letter was sent after EEC had previously commenced an action and/or obtained a judgment against that person regarding that same Erin Capital Management LLC account.*

<u>Settlement Agreement</u> at p. 3.

The Amended Complaint further alleges that Defendant violated the FDCPA by:

    a. Falsely representing to each consumer that no attorney had personally reviewed the particular circumstances of the consumer's account, when Defendant's own attorneys had, in fact, not only reviewed the consumer's account but had initiated

2

      court action on the account and, in many cases, obtained a default judgment against the consumer, in violation of 15 U.S.C. §§ 1692, 1692e, 1692e(2)(A), 1692e(10) and 1692f;

  b. Falsely representing to each consumer that the Boilerplate Communication should not be taken as a threat of legal action, when Defendant knew that legal action had already been taken against the consumer, in violation of 15 U.S.C. §§ 1692, 1692e, 1692e(2)(A), 1692e(10) and 1692f;

Id. at Para 51.

Defendant has represented and, pursuant to the terms of the settlement has provided detailed sworn certifications verifying, that there are 3647 that are eligible to opt-in to the Settlement Class ("Eligible Individuals").

### B. THE FEDERAL LAW GOVERNING THE CASE: THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Bank v. Pentagroup Financial, LLC*. U.S. Dist. LEXIS 47985, 2009 WL 1606420, at *2 (E.D.N.Y. June 9, 2009) (quoting 15 U.S.C. § 1692(e)). The FDCPA regulates the collection of consumer debts defined as debts incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); see also *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors."). When evaluating an FDCPA claim, courts apply the objective "least sophisticated consumer" standard. See *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (adopting the objective standard known as the "least sophisticated consumer" to ensure the FDCPA "protects all consumers, the gullible as well as the shrewd"); see also *Pifko v. CCB Credit Services, Inc.*, 2010 U.S. Dist. LEXIS 69872, 2010 WL 2771832, at *3 (E.D.N.Y. July 7, 2010); *Ostrander v. Accelerated Receivables*, 2009 U.S. Dist. LEXIS 27321, 2009 WL 909646, at *5 (W.D.N.Y. Mar. 31, 2009).

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. §§ 1692e. A single violation of Section 1692e is sufficient to establish civil liability under the FDCPA. See 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter"). The Section specifically identifies conduct by a defendant which violates the statute. See 15 U.S.C. §§ 1692e(1)-(16); see also *Clomon*, 988 F.2d at 1318 ("The sixteen subsections of § 1962e set forth a non-exhaustive list of practices that fall within this ban."). Such conduct includes, *inter alia*, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." 15 U.S.C. § 1692e(10); see also *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (finding that "deceptiveness" includes ambiguity).

When a plaintiff establishes a violation, he or she may recover statutory damages in an amount not to exceed $1,000, plus any actual damages sustained. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(A). Recovery in FDCPA class actions are limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. See 15 U.S.C. §§ 1692k(a)(1) and (a)(2)(B).

### C. THE TERMS OF THE SETTLEMENT

The parties have agreed to, and jointly propose the following settlement: Settlement Class Members will each receive a check for no less than $20.00, in a timeframe and procedure set forth in the Settlement Agreement. Defendant will establish a Settlement Fund initially totaling $22,000, which represents a $20 payment for 1,100 members of the Settlement Class. If there are more than 1100 members of the Settlement Class, Defendant will supplement the initial settlement fund so that there are sufficient funds to enable the settlement Administrator

to send a check for $20.00 to each Settlement Class Member. If there are fewer than 1100 members of the Settlement Class, each Class Member shall receive his or her pro-rata share of the initial $22,000 initial settlement fund.

Separate and apart from the Settlement Fund, $2,150 will be paid to the Class Representative Jeffrey Moy for his role and services in this litigation, $1,000 to be categorized as statutory damages and $1,150 to be categorized as compensation for acting as the Class Representative.

Separate and apart from the Settlement Fund and subject to the Court's approval, Defendant will, in addition, pay $36,250 in attorneys fees and costs pursuant to a schedule set forth in <u>Exhibit F</u> to the Settlement Agreement.

In addition, Defendant will pay for the costs of notice of the class settlement agreement to all class members, as well as all costs of claims administration, subject to the terms of the Settlement Agreement.

The Settlement Fund for the non-named class members shall be distributed by the Administrator's mailing checks to each class member who opts in to the Settlement Class, as laid out above. If any checks remain uncashed at the end of 90 days from the last check issued, the funds remaining in the settlement fund shall be distributed as follows: (1) the Defendant may recover the costs and fees paid to the Settlement Administrator from the fund of uncashed expired checks, and if the sum of the uncashed expired checks exceeds the amount necessary to pay the costs and fees of the Settlement Administrator, then the remaining funds be distributed as a *cy pres* award to The Financial Clinic, 115 West 30th Street, Suite 700, New York, NY 10001.

By participating in the class action, members of the Settlement Class (i.e. those Eligible Individuals who opt-into the class) will waive any future right to bring action against the

defendant herein based on the Boilerplate Collection Letter, under the facts alleged in this lawsuit. Settlement Class Members are not waiving or releasing any claim that they may have based on an alleged misstatement in any collection letter of any consumer's balance, in whole or in part, or in regard to the validity of any alleged debt, collection of which is sought in the collection letter.

## II. ARGUMENT

### A. THE RULE 23 MOTION SHOULD BE GRANTED FOR PURPOSES OF NOTIFYING THE CLASS MEMBERS

Under Federal Rule 23(c)(1) "'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.'" *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y. 2006) (quoting *Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 181 (E.D. Pa. 2000). Indeed, "[c]ertification of a class for settlement purposes only is permissible and appropriate." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-21, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)

Rule 23(a) provides that: [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class.Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a plaintiff must satisfy one of three criteria set forth in Rule 23(b). See *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994).

Here, Plaintiff Moy seeks certification under Rule 23(b)(3) which provides that certification is appropriate when "the court finds that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

1. Rule 23(a)

   a. *The Numerosity Requirement Has Been Met*

   A plaintiff is not obligated to identify the exact number of class plaintiffs. See *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). However, the Second Circuit has previously determined that numerosity is presumed at a figure of 40. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the parties agree that there are approximately 3647 Eligible Persons who meet the Settlement Class definition.

   b. *There are Common Questions of Fact of Law*

   Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Put another way, what is needed is a common nucleus of operative facts or an issue that affects all members of the class. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d. Cir. 1987). There need only be a single issue common to all members of the class. Individual circumstances of the class members may differ without precluding class certification. See *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003).

   Here, the central issue in the case is whether the statements made by Defendant in the boilerplate collection letters were false, misleading and deceptive debt collection practices which violated the FDCPA. This common issue is sufficient to satisfy this requirement.

   c. *The Plaintiff's Claim is Typical of Those of the Members of the Class*

   Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's

liability." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Id.*

In this case, all the alleged class members' claims arose out of identical or substantially similar language in boilerplate collection letters, resulting in the same violations of the FDCPA being implicated for each class member. Thus, the settlement class members' claims are typical of one another.

### d. *Plaintiff and His Counsel Offer the Class Adequacy of Representation*

To satisfy this factor, a plaintiff must demonstrate two elements: (1) "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class" and (2) "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol. A. v. Giuliani*, 126 F.3d 372, 378 (2d. Cir. 1997) (internal citations and quotations omitted); see also *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) (conceptualizing first prong as whether "plaintiff's interests are antagonistic to the interest of other members of the class").

In this matter, Plaintiff's counsel, Christopher J. McGinn of the Law Office of Christopher J. McGinn, and Daniel A. Schlanger, of Schlanger & Schlanger, LLP are each qualified and experienced attorneys, fully familiar with consumer litigation, with the FDCPA and with class action work. Mr. McGinn and Mr. Schlanger have each submitted declarations setting forth their respective credentials.

These attorneys will adequately represent the class. Further, there is no antagonism between Plaintiff's claims and those of the proposed class that would interfere with Plaintiff's ability to act as class representative. The proposed class members all received identical or

8

*substantially similar boilerplate collection letters.*

### 2. *Rule 23(b)*

Rule 23(b)(3) is satisfied as the class settlement is the superior and appropriate method for the fair and efficient resolution of this matter. With respect to Rule 23(b)(3), the Court's inquiry is a two-step process. "In order to meet the predominance requirement of rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Vias Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); see also *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (finding predominance met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof"). If predominance is found, a Court must also determine whether "a class action is superior to other available methods for . . . adjudicating a controversy." Fed. R. Civ. P. 23(b)(3).

This case involves allegedly misleading statements contained in form complaints and form affidavits submitted in state court pleadings. These statements are identical as to the class members. As such the common issues in the instant case predominate over any issues that would be subject to individualized proof. Likewise, a class action here appears to be the superior method for the "fair and efficient adjudication" of a suit potentially involving 1625 individuals with identical or virtually identical claims.

Accordingly, the Court should provisionally certify the class herein.

### B. THE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

Preliminary approval of a proposed settlement is step one of a two-step process before a

9

class action can be settled. *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997); *Passafiume v. NRA Group, LLC*, 274 F.R.D. 424, 430-431 (E.D.N.Y. 2010) A preliminary evaluation into the fairness of the settlement is undertaken prior to notice.

The court should be guided by the Second Circuit's recognition that public policy favors the settlement of class actions. See *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005)("'There is a 'strong judicial policy in favor of settlements, particularly in the class action context.' [internal citation omitted] 'The compromise of complex litigation is encouraged by the courts and favored by public policy.' [internal citation omitted]"), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2005). As Judge Weinstein has explained, "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval. *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354-355 (E.D.N.Y. 2006).[1] Therefore, a full fairness analysis is unnecessary at this stage. *Reade-Alvarez*, 237 F.R.D. at 33. n2. Preliminary approval is appropriate where it is the result of serious, informed, non-collusive negotiations, where there

---

[1] In deciding whether ultimately to approve a proposed class action settlement, the court must determine whether the compromise is fair, reasonable and adequate. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818, 78 L. Ed. 2d 89, 104 S. Ct. 77 (1983; *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992). The Second Circuit has identified the factors to be considered in determining whether to approve the settlement of a class action: (1) the complexity, expense and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the Defendant to withstand a greater judgment; (7) the range of reasonableness of the settlement fund in light of the best possible recovery; (8) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation; and (9) the response from class members (which will be determined after class notice has been provided). These factors will be applied more fully by the Court after class members have been notified.

which will necessitate additional discovery (including motion practice regarding Plaintiff's right to additional net worth discovery) should this case fail to settle. The Defendant has not agreed to class certification except for purposes of settlement, so motion practice would be necessary. The costs of a jury trial would burden any recovery obtained for the Class, if plaintiff were ultimately successful, which is by no means assured. Indeed, even assuming Plaintiff were to prevail on the merits it is entirely possible that a finding of low net worth could be deemed to render the case unfit for class-wide adjudication or could result in a significantly lower recovery than that obtained by means of the instant settlement. Defendant could well engage in an appeal, further delaying any relief to the Class for many additional months or years. Settlement will yield a quick and sure benefit to the class.

2. <u>The stage of the proceedings and the amount of discovery completed</u>

The attorneys for the parties have engaged in informal discovery. The Defendant have identified the parties meeting the definition of class membership, and Defendants have provided detailed, sworn certifications by both a principle and the Defendants' back-office document production vender verifying the accuracy of the list of Eligible Individuals provided to Plaintiff's counsel.

In addition, after the parties' negotiated a non-disclosure agreement that was so ordered by the Court, Defendant produced discovery purporting to show Defendant's negative net worth.

In short, Plaintiff's counsel has assured themselves that they have enough information to assess the fairness of the proposed settlement. Settling at this stage will obviate the need for expensive and lengthy formal discovery, including heated motion practice, the outcome of which is uncertain, regarding Plaintiff's entitlement to additional net worth discovery.

Moreover, the Settlement is the result of exhaustive negotiations between the parties over

the course of the past 12 months. Indeed, the ECF docket confirms no fewer than 16 settlement conferences held between the parties, and counsel for the parties have engaged in innumerable additional telephone calls, email exchanges, and exchanges of proposed settlement documents. There can thus be no question but that the proposed settlement is the result of *bona fide*, arm's length negotiations. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-804 (2d Cir. N.Y. 2009); *People United for Children, Inc. v. City of New York*, 2007 U.S. Dist. LEXIS 15425, 8-9 (S.D.N.Y. Feb. 23, 2007)

3. The risks of establishing liability and the risks of establishing damages

Recovery in FDCPA class actions are limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. See 15 U.S.C. §§ 1692k(a)(1), (a)(2)(B). The proposed settlement signifies a significant accomplishment inasmuch as the $22,000 in settlement for the class appears to be far greater than 1% of the Defendant's net worth. Indeed, Defendant claims a negative net worth, meaning that, if such assertion withstood a trial court's determination, the Class could be in the position of recovering nothing.

Eligible individuals who participate in the settlement are being asked to waive only a very narrow right, the right to bring suit against the Defendant on the basis of the alleged false statement in the dunning letter (*i.e.*, the statement that no attorney had personally reviewed the particular circumstances of the consumer's account.) Settlement Class Members will retain all other rights they may have to challenge EE&C's actions.

Moreover, this case is an opt-in class action, meaning that only those class members who return the notification form will waive their rights vis-à-vis Defendant.

4. The risks of maintaining the class action through the trial

13

As described above, the Plaintiff has not yet moved for class certification. Settlement removes any risk that class certification would be denied or that, if granted, such decision could be appealed. For example, if Defendant was successful in proving up its negative net worth, class treatment could be ruled not be superior to individual adjudication and class certification denied on this basis.

> 5. <u>The ability of the Defendant to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation</u>

As described above, the FDCPA puts a cap on class action damages. The settlement herein obtains for the class more than 100% of the amount that could likely be collected against the Defendant law firm as statutory damages.

> 6. <u>The Attorney's Fees Provisions Of the Settlement Are Reasonable</u>

Pursuant to the Settlement Agreement and subject to Court approval, Defendant will pay $36,250 in attorney's fees separate and apart from the recovery to the class. Specifically, as set forth in the Agreement And Stipulation Regarding Payment Of Attorney's Fees attached to the Settlement Agreement and incorporated therein, this amount will be paid in three installments with Plaintiff's counsel to hold a Confession of Judgment in escrow pending payment in full.

The attorney's fees provision of the Settlement Agreement is emininently reasonable.

> a. Even prior to issuance of Notice (which will necessitate responding to inquiries from Eligible Individuals), the Fairness Hearing and the work that will be required post-Final Judgment, the agreed upon attorney's fees constitute less than ½ Plaintiff's counsels' actual time.
> 
> b. Plaintiff's counsel's fees were negotiated at arm's length over the course of months.
> 
> c. Counsel's fees are not paid out of the same fund as the class members' recovery.

14

Indeed, at Plaintiff's counsel's insistence, the issue of fees was negotiated only after all other terms of settlement had been agreed upon. Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 U.S. Dist. LEXIS 89226, 27-28 (E.D.N.Y. Dec. 11, 2006)(citing fact that fees were negotiated separately as factor in favor of approval in FDCPA class action).

d. Plaintiff's counsel will provide their detailed, contemporaneous time records prior to issuance of the Final Judgment approving the proposed settlement.

The factors listed above all provide strong support for the preliminary approval of this settlement.

## III. THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *American Med. Ass'n v. United Healthcare Corp.*, 2009 U.S. Dist. LEXIS 45610, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members "the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort." With regard to class certification pursuant to a settlement, the notice "must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade-Alvarez*, 237 F.R.D. at 34 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982)).

The proposed notice meets the requirements set forth under Rule 23(c)(2)(B). The

proposed notice here contains all the necessary information, including the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the class. The Defendant will mail, by first class mail, the Class Notice to each class member at his/her last known address.

## CONCLUSION

For the reasons set forth above, the parties' joint motion to certify the settlement class and for preliminary approval of the class settlement should be granted and the Court should set the various dates and deadlines for notice, opt-outs, exclusions, objections, and a hearing under Rule 23.

November 15, 2013

Respectfully Submitted,

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
Ph: 914-946-1981
Fax: 914-946-2930
daniel@schlangerlegal.com


Christopher J. McGinn, Esq.
The Law Office of Christopher J. McGinn
75 Raritan Ave, Suite 220
Highland Park, NJ 08904
Ph: 732-937-9400
Fax: 800-931-2408
cjmcginn@njconsumerprotection.com

*Counsel for Plaintiffs*